Good morning, Your Honors, and may it please the Court, Peter Afrasiabi of the Chapman University School of Law, appointed pro bono counsel for Petitioner Manuel Martinez. Your Honors, this Court should reverse because there is no specific cogent reason to support the immigration judge's adverse credibility finding on the issue of 10-year continuous residency. The testimony was uncontradicted that Mr. Martinez had been in the nation since 1987. On that point, importantly, the IIS, after hearing all the evidence, conceded the point before the immigration judge when they indicated they had no issue. They indicated they had no issue as to the 10-year continuous residency or the good moral character. The only issue before the immigration court being the extreme hardship question. Now the immigration judge ruled on other grounds. Before getting into the weeds on the immigration judge's ruling and the specific points which I'll hit the bottom line on, I think it's important to look at this case in the context of the bigger issue. Definitely. Here, Your Honor, the context is critical. Mr. Martinez was trying to have his day in court and an adjudication on the merits of whether deporting him and his U.S.-born children, one of whom has a cleft palate medical condition, would impose undue and extreme hardship on the family. His children? His children are U.S.-born, Your Honor. One of them has a cleft palate medical condition. Mr. Martinez has medical insurance through his employer, Kmart, where he'd been employed continuously for about 15 years. That issue and whether on these facts it's fair to deport a person and his family didn't get addressed or an adjudication on the merits wasn't given because of where the immigration judge went. And so on that point, I come back to He said he was statutorily ineligible. The immigration judge concluded that Mr. Martinez had not been here for 10 years continuously. By the way, how does that affect our jurisdiction? You have jurisdiction over the immigration judge's conclusion that he was not here for 10 years, that he did not have 10 years continual residency. You also have jurisdiction over the good moral character, adverse credibility determination made by the immigration judge. We don't really know what the basis for the good moral character determination was. We do, Your Honor. From the record, there really can be only one basis for that that Mr. Martinez in effect lied to the court. The documentary evidence was uncontroverted, that he had good moral character. Indeed, the United States of America I actually never went so far as to say that he lied. He just found him not credible. Well, that may be a plight way of saying he lied. He testified under oath and his brother did. On this record, I don't believe there is a difference, Your Honor. He said he didn't find him eligible for voluntary departure. Indeed, and it makes absolutely no sense. If the entire record is that Mr. Martinez has good moral character, the government concedes it and the immigration judge says, lo and behold, there's a serious conflict in their testimony. I think they both lack credibility. They testified under oath. In effect, they lied or they mischaracterized the evidence. They did something significant for both of these witnesses to be deemed to lack any credibility in what they told the court. Since there is no other record evidence that he had a bad moral character and given the government's concession, in effect, this man is of good moral character. Really, the only basis one can divine from the record is that the judge thought he lied under oath. And by throwing out, well, you can have voluntary departure, doesn't, in our view, we submit, insulate the court's decision from this court's jurisdiction and review. Otherwise, any immigration judge in any time can simply say he lacks good moral character and I grant voluntary departure. That, we contend, isn't right. As to the 10-year issue, Your Honors, the rub of it was that Mr. Martinez, the petitioner, testified he had been here since 1987 and he left for two and a half months. His stepbrother said he didn't recall if his stepbrother, the petitioner, had left for two and a half months. That is perhaps an inconsistency, but it is completely irrelevant. And that's the key point. A departure. Oh, but doesn't that really go to whether he was really even here in 1987? I'm sorry, I missed your question. Doesn't that really go to whether he was even here in 1987? It doesn't, Your Honor. Whether he left for two and a half months in 1988 has no bearing on whether he was here in 1987. His testimony and his stepbrother's testimony was that he entered in 1987. No, well, the stepbrother said, well, he lived with me, he saw him every day. And, you know, if he wouldn't recall that he left for that period of time, I mean, that does present a credibility issue, doesn't it? I don't believe it does, Your Honor. The stepbrother didn't recall whether 15 years earlier his stepbrother had left for a two-month period to Mexico. I don't think that's outrageous and shocking for someone to not recall. Well, it's outrageous. The question is, does it support an adverse credibility finding? It doesn't have to be shocking and outrageous to support a credibility finding, does it? No, it doesn't, Your Honor. But the adverse credibility finding needs to be predicated upon an issue that goes to the heart of the matter. And whether he departed for two and a half months simply doesn't matter. He didn't benefit and he didn't stand to gain by lying to the immigration courts and saying he left for two and a half months or by his stepbrother saying he didn't. There was nothing to be gained by that. That's right. I agree with that. So the whole it all comes down to whether he was even here in 1987 and his testimony was that he was his brother's testimony was his stepbrother's testimony was that he was there was no documentary evidence. That's obviously because he had some corroboration for a later period, didn't he? He did for later periods, but there was none for 1987. And that was another issue the immigration judge had. Our position on that is under this court's Vera Villegas case, the absence of cash as a migrant from Mexico isn't fatal to the field. But the question is, why would he have it for some period, not for others? For that period of time, as he testified to the immigration judge, he was earning cash. It was after that that he started working for Kmart where he still works and he's been filing tax returns. And in the record, it indicates he was asked by, I believe, the government attorney why there was no tax return for 87. And he gave he gave a cogent explanation to the court. He wasn't aware of the issue at that point that he even had to file one. That doesn't render his story incredible. And the absence of documentary evidence, I'd also add 14 years later, shouldn't be fatal. Your Honor's petitioner submits that the inconsistencies there that we've discussed are not of the kind that justify the adverse credibility finding. And this case, we believe, falls within that constellation of case law cited in our brief, the Valerio Lopez case, for instance, where this court has reversed. What do you make of the application for relief, the application for adjustment, for cancellation and the failure to complete all the boxes? Well, the box, there were two boxes, I believe, that the immigration judge had an issue with. One of them is the box that was checked. I think it was number 25 where he indicated he had been here without departing ever since his first entry, which he listed as being in 1987. Obviously, that's an inconsistency. There's no doubt about that. Now, the form has been filled out clearly by a computer. This is a person who doesn't speak English. Why it's there, it's not in the record. He was never asked specifically, why does that box, why is that box checked when you've testified that you left for two and a half months? There's no explanation. I remember, I recall when I read this, that at the hearing, he was asked whether or not everything he said in his application was true and correct. And he said, well, I need to correct it. He was asked that and he indicated it's correct. I thought he, didn't he, didn't he indicate at the very beginning of the hearing that he had departed, that the application was correct, except for he needed, he needed to correct a statement in the application. He made clear that he departed for two months, but the application itself hasn't been touched in any other way. No, right. But at the hearing, at the hearing, at the outset, he acknowledged. I believe you're correct, Your Honor, but I'd have to double check that. I thought, yeah. I believe you're correct, but I apologize for not knowing definitively. Um, he unequivocally made clear on the record though, that he did depart for two and a half months. And it's a departure that doesn't stop the clock from running. Your Honor, it's, it comes from the U S code and from this court's case law that we've cited, and it was an issue that was never contested by the United States government below. So Your Honor, recognize, I'd like to save the last minute. Thank you. May it please the court. Jamie Ann Yavelberg for the attorney general. The petition for cancellation for removal should be dismissed because the evidence does not compel a conclusion contrary to those reached by the immigration judge. Substantial evidence supports the immigration judge's finding that the petitioner did not meet his burden of establishing the 10 year physical  The notice to appear was submitted to the immigration judge in the And to satisfy the 10 year physical presence requirement, the petitioner had the burden of establishing his continual physical presence in the United States for the 10 years prior, having admitted his documented entry into the United States on a visitor's visa in December of 1988, the petitioner needed to demonstrate that he was in the United States continuously prior to that time, for at least 10 years, the petitioner offered his own testimony, the testimony of his stepbrother and documentary evidence in support of his application. There's there is no contradiction to his testimony that he was here in 87. Well, the the the we submit that the case here is about the dates of the petitioner's physical presence in the United States. I understand that, but he testified he was here in 87 and that's not contradicted. Well, the the the entire time period prior to December 1987, we submit is the critical question here before the court. His entry for December of 1988 was documented and was admitted. And the petition, but that doesn't go far back enough. That doesn't meet the full 10 years. So the petitioner then had the burden of showing that he had to testify to get back OK, so she was question was he testified that he arrived in February of 87? Yes, he did. And then the brother when the brother got up there, the stepbrother got up there. He testified that he arrived in 87. But the but the stepbrother's testimony completely refuted the claim of an earlier entry and departure. So how did. Well, no. Wait a minute. The brother testified first that he was there, that he arrived in 87. Yes. All right. Yes. And then the question was asked. Well, has he ever departed? Right. And that's what he testifies about. Well, he had been there. He didn't recall him. He says something to the effect. I don't recall that he departed. And I would have known because he lived with me and he's continuously been been with me. So why is that inconsistent with the petitioner's statement that he arrived in 87, that in February of 87? It's inconsistent because the the entire time period prior to December 1988 is what is at issue here. And the fact that there was a portion of it was consistent, but a portion of it was inconsistent does render the testimony. Well, the inconsistency is between the brother, the stepbrother's testimony that he hadn't left the country and the petitioner's testimony that he had left the country for two and a half or two months or two and a half months, whatever it was. Yes. And so on that inconsistency, the IJ says, well, you're both unbelievable. That's right. She says, I'm not believing anything. Either you say that's a that's a major point, apparently. Yes. And it's irrelevant. Well, whether that's an absence of 90 days, that an absence of less than 90 days would not have barred the petitioner from showing his 10 years. But given that there was a clear conflict, this was this was basic questioning to the petitioner and to the stepbrother. Very clear questions, very clear, crisp answers. The stepbrother did not say, I do not recall when he was asked, did he depart the United States? The testimony was no. And that was on page 24 of the record. They're working through interpreters, aren't they? No, they're not. This this proceeding was conducted. There was there's no evidence here of any type of miscommunication or misunderstanding. And there's nothing to support an inference of that nature here. The proceedings were conducted in English without the aid of an interpreter by both of the witnesses. Neither witness showed any difficulty understanding any of the questions. And the petitioner was represented by counsel at both of his appearances before the immigration judge. His his April appearance when the counsel withdrew the asylum application and told the court it was going to submit an application for cancellation of removal. And Your Honor, I believe you're you're saying that there were liars that had gotten together, told one story. Well, the immigration judge didn't have to find that they were he didn't have to find they were liars. He just found that the testimony. You can always find inconsistencies in people's testimony. Well, we suppose back how many years now? It goes back. It goes back, I guess, about 15 years. But remember what happened 15 years ago. Well, as for the claim, which the petitioner makes that the stepbrother might have just forgot. Well, if it's plausible to believe that the stepbrother was right about the 1987 date and then just forgot about the 1988 departure and then reentry, it is just as plausible to believe that the stepbrother was right about the fact that the petitioner never departed after entering the United States and that the petitioner was just mistaken about which year it was. And the the determination by the immigration judge there was reasonable. Your Honor, if I might point out the exact exchange between between Mr. Heckler, I guess, who was he was the petitioner's attorney and Mr. Sandoval. Did he ever leave the United States, to your knowledge? Pardon me. To your knowledge, did he ever leave the United States? No, I don't think so, because because he all the time at my house, I know him for a long time and I continuously saw him. And that was the whole exchange. There was, I think, an exchange just prior to that where the petitioner arrived at my house in 1981. You're right. He says he arrived to my house in 1987 and you have known him to be in the United States since then. Yes, he has stayed here. He has stayed here. Yeah, he lives here all the time. Yes. And we believe that that testimony says that he arrived and he never left. And given the time period, given that the time period here, December 1988, there's no question there's an abundance of evidence in the record to support his presence from December of 1988 forward. The petitioner submitted tax returns from that time period. And both he and his brother agree that he arrived in 1987. They agree that he arrived in 1987, but then the discrepancy is whether he departed in 88. That is where the discrepancy was. As a result of that discrepancy, the IJ says, do you know? Yes. I don't know what. But what is why is that? Why does it tell me why? Why that goes to the heart of his claim? Because the in order to satisfy for cancellation of removal, the petitioner needs to show a 10 year period. Dates are the key of that application. This is this is different from, for example, the asylum applications where a minor inconsistency about a date is something that the court says the immigration judge cannot rely on. But given that the key issue here is the date, is the time period, a discrepancy. The testimony here was very brief and very to the point. And given the limited nature of the testimony, the fact that there was a glaring inconsistency about an earlier departure and reentry, we believe gives the immigration judge reasonable reason. I understand what the IJ did, though, here is he he discredited both their testimonies. I don't believe either of you. Yes. And he's he's permitted to do that. He he made a reasonable determination based on a clear conflict here. There's no there was no speculation or conjecture. There's a clear conflict. And based on that clear conflict, he made an overall credibility determination about the witnesses that is supported in the record. And when he says I didn't believe either of you, I'm he's saying I don't believe the testimony of either of you that petitioner came here in 1987 or has been here since 87. Is that what you mean? Yes. And he discredits all the testimony. But he bases that on. Not the fact that there's any evidence. Affirmative evidence to support that position just by, in effect, what concluding on the basis of credibility at the petitioner didn't carry his burden. Is that what it amounts to? Because he's not truthful. Yes, I think that's right. The the immigration judge's decision is is supported based on the clear conflict in the testimony here, the idea that. So when you have a petitioner is not truthful, why would he find that? That brother was also untruthful because of the conflict in the testimony. Yeah. Stepbrother's a liar. Then. You think that the brother, that his stepbrother. Would. Testimony would be would be credible and accepted. And if the petitioner is a liar, then that's another thing. Isn't there an inconsistency there? I mean, if you believe this, the petitioner is a liar. You'd have to believe that the stepbrother was telling the truth. Well, we respectfully would disagree with that, that you don't have to believe that either one of them is necessarily telling the whole truth to find that both of them are not credible in some respect. What you're suggesting is that the IJ really sort of concluded, well, these people got together to tell a story that he came in in 87, but didn't quite get all the facts straight. So I'm not going to believe the story that he came in 87, right? Isn't that what it amounts to? I mean, I mean, you're your position. Well, it's the immigration. It appears that that's the thought process of the immigration judge. Yes. And you think that's sufficient to support the credibility? We do. And under under a case before this court, Wang, the INS, the 2003 decision, although speculation may not be substituted for substantial evidence, the immigration judge need not ignore probable inconsistencies in the testimony and the documentary evidence. You would undermine the petitioner's claim. You're sort of saying in the end you would have been better off not calling his brother to testify at all. Right. We can't say what would have happened had he not called the stepbrother or had he asked the stepbrother additional questions. This petitioner had counsel there. The counsel had an opportunity to to clarify or make any other closing statement. And and the counsel did not attempt to. I believe his name was Mr. Heckler, but I don't know him personally, but he was represented in the the other. Well, you know, we have a big problem in these immigration cases. So very few of these people have good lawyers. You know, most of them are just sort of floating in and out and getting fees. And a lot of them just file the same brief in every case. Well, I find matters on the docket at the same time. I can't speak to the. You got to think about that, too. And and the last time I checked, it may be different now. You could be a disbarred lawyer and practice before the immigration court. Your Honor, I can't. I did not know that. You don't have to be a lawyer. You know, I don't know, Your Honor, but but I do think that and I can't speak to the scale of one to ten, ten being a good lawyer. A lot of them are down there at about point five. Well, there's there's nothing here to suggest that this particular lawyer was was enough. He appeared twice on behalf of this petitioner. He appeared in April and then he showed up again. So he was not a. That's the fact we would also point out, Your Honor, in addition to the 90 percent of life is showing up. Well, here I am on behalf of the attorney general. In addition. I'm sorry. OK. In addition to the the the inconsistency between the testimony, we would also point out the the inconsistency with the application itself, which was alluded to earlier as well. That was corrected at the beginning of the hearing. No, he did not. Your Honor, I believe that I thought the I.J. asked him, is everything true? And he said, yes, except I'd like to point out that I entered that I left the country. I believe actually that was at the April hearing. And at some point he corrected it along the way. Well, what he corrected was the notice to appear. I believe this was at the I'm sorry. I did write it down, but now I can't find it. The April 1998 hearing. This is when he just showed up for the first time, the counsel. And it's at the record at page 40. And the immigration judge asked the counsel, is everything in the notice to appear true and correct? And the counsel said, yes, but we'd like to add that there was this earlier departure and then reentry. So it was in respect to the notice of departure. No. And then and and then the application was completed after that hearing. With the assistance of this this counsel and it was somebody made a mistake then. Well, then it was they made the mistake several times and then they submitted testimony by the by the stepbrother. That was also inconsistent. But his testimony was always consistent that he departed the country in 88. The petitioner's testimony, his testimony. Yes. Obviously was a mistake on this application. Was that he. Well, it was a glaring mistake. The application deals with the issue of whether or not he. The questions are since the date of my first arrival, I departed from and returned. He probably had somebody help him prepare that. It's typed up. You can tell it's been generated by a computer or something. Yes. Yes. Yes. That that may have been the case. But but it is it is important that he was consistent in his oral testimony before the I.J. that he had left the country when he came in and when he left the country. He departed from that. No, he testified once. He has his counsel made statements at the initial hearing and then he testified once. He testified that he he entered in 87 that he left in October of 88 and he came back in December of 88. But he also testified that everything in his application for cancellation approval is true. And it and it and it is in conflict. There has been an honest man. He probably wouldn't have brought up that. It's part two and a half months or so. Well, he had to because the December 1988 entry was documented. He came in on a valid visitor's visa. It would have been very difficult for him to to not admit that. Here we the the immigration judge carefully read, analyzed and evaluated the evidence. And he made a finding that the petitioner failed to meet his burden of showing that continuous physical presence. He received the testimony from the witnesses. And there's a conflict in it. There there clearly is a conflict in it. And the conflict we submit goes to the crux of the application, which is the time period, the 10 year time period. He had the burden of showing that he was here prior to December 1988. And there's a conflict as to that point. One says he came and he left and he came back. And another says he came. You're six thirty seven seconds over your visa. I'm sorry, Your Honor. I am very serious. But we'll forgive you. Well, thank you. Would you would you like me to conclude? Oh, I thought you did. OK. Well, to wrap it up, I would say that the the evidence does not compel a contrary result on the substantial evidence point. And regarding the the now, if the court let me just add. We submit there's no need for the court to reach the good moral character determination to determine whether or not that was discretionary or statutory. We submit it with discretionary because we think that the petitioner fails on the 10 year physical presence requirement. But if this court is inclined to find the petitioner was credible and if he did meet the 10 year statutory requirement, we submit that this court should remand on the good moral character determination as to whether or not it was discretionary or statutory. And likewise, for the hardship determination, because there was none made in the first instance on the record below. Thank you very much. Thank you. Very briefly, Your Honor, with respect to your question, Judge Pius, pages 44 and 45 of the record, the judge asked the lawyer with respect to the cancellation of removal application, if there was anything about it, and on 45 is where he makes reference to the affidavit of residency for 1987. So that's on pages 44 and 45 of the record. Now, Your Honor's right. He corrected the application, correct? That, well, that in effect is a correction. The judge later said, you know, have you gone over this? Yes, sir. Is everything correct? Are there any objections? No. Go ahead. And this, and it was marked as Exhibit 2. The administrative record isn't clear on what's at Exhibit 2. There is a page in here which lists affidavit of residency, and it's been crossed out on page 83 and 84. And I think that was in. It may be that it didn't make it into the record because he testified. It's just unclear. Okay. The bottom line point is you're right, Judge Pragerson. Inconsistencies exist in the record. They always exist in the record. I'm a civil business litigator. If I asked my clients on the stand three questions, as this lawyer did, I would be sued for malpractice. There's a huge difference between the search for truth in proceedings and the search for an inconsistency, which has nothing to do with the heart of the matter, but which inconsistency can be latched onto to say, heaven forfend, everyone's lied to me. I don't believe a word of this. And that's the rub of the case, we submit, Your Honors. Unless the court has anything further, and so as not to repeat, just to rebut, we would thank the court for its time and consideration, and we would submit. So what's your connection with Chapman? I'm an adjunct professor there, and I teach in Ninth Circuit Clinic, and I've done so for the last several years. And we take a couple of Ninth Circuit pro bono appeals every year, primarily immigration ones. And normally the students get to argue them. But unfortunately, this one got off track and the students graduated last spring. And so they're not able to argue before you. Yeah, I thought you were a pretty good student. Well, thank you, Your Honor. Appreciate the work of the pro bono program. Yes, you've done a terrific job for your client. Both sides. Thank you. Thank you very much. Thank you. What do you teach as an adjunct professor? Ninth Circuit Clinic, Pellet Law Clinic. Oh, Pellet Law Clinic. We'll come to the next matter is.
judges: Pregerson, Tashima, Paez